**SIGNED this 23rd day of December, 2010.**

_____
**LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE**
_____

# United States Bankruptcy Court

### Western District of Texas
### San Antonio Division

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| SAMBRANO CORPORATION, | 08-31291 |
| *DEBTOR* | CHAPTER 7 |
| J. MARSHALL MILLER, CHAPTER 7 TRUSTEE,. | |
| *PLAINTIFF* | |
| V. | ADV. NO. 10-03032 |
| CABCRANE, INC., FAUSTINO FLORES, AND STEVEN SAMBRANO | |
| *DEFENDANTS* | |

**MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

CAME ON for hearing the foregoing matter. On December 22, 2010, this court heard argument on Faustino Flores' ("Flores") Objection to Plaintiff's Notice of Intention to Take Oral Deposition and Motion to Quash Subpoena Duces Tecum [Docket No. 39] as well as the Trustee's response to the above-referenced motion and the Trustee's Motion to Compel Production of

Documents [Docket No. 40].  For the reasons stated below the court will grant in part and deny in part the Trustee's Motion to Compel Production of Documents.

**Factual Background**

Information on file with the Secretary of State indicates that Defendant Flores is allegedly an officer and/or director of Defendant Cabcrane. He is also the Secretary and Treasurer of the Debtor. On August 17, 2010, the trustee filed an adversary proceeding against Cabcrane and Flores alleging, among other things, fraudulent transfer. In connection with discovery in that proceeding, the parties agreed that the trustee would take Flores' deposition on December 27, 2010. Flores did not object to the deposition itself, but objected to the trustee's demand that Flores produce various documents at the deposition. Flores has objected to this production on Fifth Amendment grounds, arguing that the compelled production of certain documents requested by the trustee would violate his Fifth Amendment right against compelled self-incrimination.

In particular, the requests to which Flores has objected on Fifth Amendment grounds are:

1) any and all bank statements from the years 2005, 2006, 2007 and 2008 for any accounts on which you were a signatory;

2) Tax returns for the years 2005, 2006, 2007 and 2008, including W-2s, 1099s, K-1s, and any other supporting documentation evidencing income earned, for you and your spouse;

3) all financial statements prepared by you or on your behalf for the years 2005, 2006, 2007 and 2008 for you and your spouse;

4) any and all title for vehicles, boats, recreational vehicles, trailers, and any other titled property in which you currently hold an interest, either individually or through community property;

5) any and all documents evidencing ownership in real property in which you and/or your spouse hold an ownership interest.

2

The trustee filed a response arguing that the documents at issue fell within the "required records" exception to the Fifth Amendment "act of production" privilege.

The Defendant also contended that, independent of his claim of privilege, the Plaintiff's request for production with respect to items four and five is premature, as the discovery is more appropriate to post-judgment discovery.

**Legal Analysis**

The Fifth Amendment protects "an individual from being compelled 'to produce evidence which may later be used against him as an accused in a criminal action.'" *Toyota Motor Credit Corp. v. Palma*, 2007 U.S. Dist. LEXIS 86540, at *4 (N.D. Tex. Nov. 26, 2007) (quoting *Maness v. Meyers*, 419 U.S. 449, 461 (1975)). "This privilege may be asserted in any proceeding, including a civil proceeding." *Id*. In *Fisher v. United States*, the Supreme Court held that the Fifth Amendment privilege against self-incrimination could be invoked to protect an individual from being compelled to personally produce documents, even if the contents of those documents were not privileged, if the act of production would have testimonial aspects that could be self-incriminating. *Fisher v. United States,* 425 U.S. 391, 410 (1976). The Court noted that, by producing documents, the producing party implicitly concedes possession and control of the documents and indicates that the documents produced are, in fact, the documents described in the subpoena, thus implicating the testimonial prerequisite for Fifth Amendment protection. *Id*. This decision solidified what is commonly called the "act of production privilege." The Southern District of New York succinctly summarized this privilege in *AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. International Dev. & Trade Servs.*:

3

the act of production may result in incriminating testimony in two situations: "(1) if the existence and location of the subpoenaed papers are unknown to the government; or (2) where production would implicitly authenticate the documents. "

1999 U.S. Dist. LEXIS 16617, at *19-20 (S.D.N.Y. Oct. 21, 1999) (citation to *Fisher* omitted). Therefore, if the "existence and location of the [subpoenaed] papers are a foregone conclusion and the [subpoenaed party] adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers[,]" then "no constitutional rights are touched" by enforcement of the subpoena. *Fisher*, 425 U.S. at 411. "The question is not of testimony but of surrender." *Id.*

To receive Fifth Amendment protection under the "act of production privilege," two requirements must be satisfied: (1) The act of producing the documents must have "testimonial" aspects (as described above) and (2) the documents must be self-incriminating. To satisfy the self-incriminating prong of the privilege, the party asserting the privilege must demonstrate a "real and substantial risk" that answers may tend to incriminate. *In re Gilboe*, 699 F.2d 71, 74-75 (2d Cir. 1983); *see also United States v. Fox*, 721 F.2d 32, 40 (2d Cir. 1983) (stating that "'[t]he witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself – his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified.'") (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)); *United States v. Argomaniz*, 925 F.2d 1349, 1353 (11th Cir. Fla. 1991) (stating that "[t]he [party] seeking the protection of this privilege [against self-incrimination] to avoid compliance with an IRS summons 'must provide more than mere speculative, generalized allegations of possible tax-related

4

prosecution. ... The taxpayer must be faced with substantial and real hazards of self-incrimination.'")

(quoting *United States v. Reis*, 765 F.2d 1094, 1096 (11th Cir. 1985)).

It is possible for a party to receive protection under the act-of-production privilege even where no criminal case is pending against him. *See In re DG Acquisition Corp.*, 208 B.R. 323, 329 (Bankr. S.D.N.Y. 1997) (concluding that four non-debtor spouses could raise the Fifth Amendment act-of-production privilege in response to various subpoenas from the trustee even though there were no criminal charges pending against either the debtors or their spouses). Here the trustee has filed an adversary proceeding alleging fraudulent transfer, but no criminal charges are currently pending against Flores. Thus, the issue is whether requiring Flores to produce the requested documents would have testimonial aspects that would tend to incriminate Flores. The Supreme Court has extensively addressed the application of the act-of-production privilege in two cases: *Fisher*, 425 U.S. 391 (1976) and *United States v. Hubbell*, 530 U.S. 27 (2000). In *Fisher*, the Court refused to grant Fifth Amendment protection to the act of producing certain tax documents, concluding that requiring the subpoenaed party to produce the requested documents would not be testimonial; the Court noted that the government already knew of the existence of the requested documents and could independently authenticate them. *Fisher*, 425 U.S. at 411-13. In *Hubbell*, on the other hand, the Court upheld the subpoenaed party's assertion of the privilege. The Court there stated,

> [w]hile in *Fisher* the Government already knew that the documents [described in the subpoena] were in the attorneys' possession and could independently confirm their existence and authenticity through the accountants who created them, here [in *Hubbell*] the Government has not shown that it had any prior knowledge of either the existence or the whereabouts [of the requested documents].

*United States v. Hubbell*, 530 U.S. 27, 44-45 (2000). These cases illustrate that "[w]hether an act of production is sufficiently testimonial to implicate the Fifth Amendment, [] depends on the

5

government's knowledge regarding the documents before they are produced." *United States v. Ponds*, 454 F.3d 313, 320 (D.C. Cir. 2006). In other words, if the government (or here, the trustee) already knows that the requested documents exist, then the act of producing those documents would not be "testimonial;" it would not serve as an implicit admission of the existence of the documents. *See Fisher*, 425 U.S. at 411. "The government 'bears the burdens of production and proof on the questions of . . . possession and existence of the summoned documents." *Doe v. United States (In re Grand Jury Subpoena)*, 383 F.3d 905, 910 (9th Cir. Cal. 2004) (quoting *In re Grand Jury Proceedings, Subpoenas for Documents*, 41 F.3d 377, 380 (8th Cir. 1994)). "When deciding whether the government has met its burdens of production and proof, courts should look to the 'quantum of information possessed by the government before it issued the relevant subpoena.' *Id.* (citation omitted). Before the *Hubbell* case went to the Supreme Court, the D.C. Circuit established a "reasonable particularity" standard for the government's burden of proof. *See Hubbell*, 167 F.3d 552, 579-80 (D.C. Cir. 1999) (requiring the government to establish its knowledge of the existence, possession, and authenticity of the subpoenaed documents with "reasonable particularity" before the communication inherent in the act of the production could be considered non-testimonial, and thus not protected by the Fifth Amendment). Although the Supreme Court did not explicitly adopt this particularity standard in *Hubbell*, the D.C. Circuit has since found that this standard remains valid and is consistent with the Supreme Court's holding in *Hubbell*. *See Ponds*, 454 F.3d at 320-321.

At the hearing, the trustee established, with reasonable particularity, his prior (independent) knowledge of the existence and authenticity of some of the requested documents (specifically, Flores' bank statements, tax forms, deeds and vehicle titles) (discussed below). That showing, in turn, establishes that the government as well would easily have an independent basis for knowing

6

of the existence of these documents – they need only ask the trustee. Such a showing was not

necessary, however, with respect to Flores' tax forms, because those documents fit within the

"required records" exception to the act-of-production privilege.

> Under this exception, a person whose records are required to be maintained by law has no Fifth Amendment protection against self-incrimination when those records are ordered to be produced. *See In re Two Grand Jury Subpoena Duces Tecum Dated Aug. 21, 1985*, 793 F.2d 69, 73 (2d Cir. 1986) (the required records exception overrides the Fifth Amendment privilege "in situations in which the privilege would otherwise apply . . . ."); *Doe v. United States*, 711 F.2d 1187, 1191 (2d Cir. 1983). To qualify as a required record, a document must satisfy a three-part test: (1) it must be legally required for a regulatory purpose, (2) it must be of a kind that the regulated party customarily keeps, and (3) it must have assumed 'public aspects' which render it analogous to public documents.

*AAOT Foreign Econ. Ass'n (VO) Technostroyexport*, 1999 U.S. Dist. LEXIS 16617, at *20-21

(citing *Grosso v. United States*, 390 U.S. 62, 67-68 (1968)); *see also In re Grand Jury Subpoenas*,

772 F. Supp. 326, 331 (N.D. Tex. 1991) (applying same three-part test for required records

exception to act-of-production privilege). This exception "presupposes that compliance with the

government's inquiry may be incriminating. Accordingly, 'where the narrow parameters of the

doctrine are met, and the balance weighs in favor of disclosure, the information must be forthcoming

*even in the face of potential incrimination.*'" *Id.* (citations omitted) (emphasis in original).

Flores' tax forms–i.e. his tax returns, W-2s, 1099s, K-1s, etc.–fall within the required records

exception. "The filing of individual tax returns is required by law and is part of the Internal

Revenue Service's regulatory scheme. Copies of tax returns are customarily kept by taxpayers.

Moreover, if a required attachment to a return--the W-2 statement--gains a public aspect by virtue

of being filed with the return, then plainly the filed return also acquires the same public aspect."

*AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. International Dev. & Trade Servs.*, 1999 U.S.

Dist. LEXIS 16617, 21 (S.D.N.Y. Oct. 21, 1999); *see also United States v. Clark*, 574 F. Supp. 2d.

262, 267 (D. Conn. 2008) (noting that "[c]ourts in the Second Circuit have held that 'required documents' include 'W-2 forms, 1099 statements, tax returns, and employee earnings statements.'") (quoting *United States v. Barile*, 2007 U.S. Dist. LEXIS 84393, 2007 WL 3534261, at * 3 (N.D.N.Y Nov. 2, 2007)); *In re Doe*, 711 F.2d 1187, 1191 (2d Cir. 1983) ("We have little difficulty applying the required records exception to the W-2 and Schedule II prescription forms."); *United States v. Edgerton*, 734 F.2d 913, 918 (2d Cir. 1984) ("There is precedent for holding that W-2s and Forms 1099 are required records.").  Thus, Flores must produce his tax returns for the years 2005, 2006, 2007 and 2008, including W-2s, 1099s, and K-1s.

Flores' bank statements, and documents evidencing ownership of vehicles and real property, present a different issue. Records prepared by someone other than Flores, even if not within the "required records" exception, generally do not receive protection from compelled production under the Fifth Amendment. In *United States v. Tervort*, the summonses at issue requested "documents and records regarding assets, liabilities, or accounts held in Respondent's name or for his benefit and which he owned in whole or in part, or in which Respondent had a security interest, including but not limited to bank statements**,** checkbooks, canceled checks, savings account passbooks, records or certificates of deposits, current vehicle registration certificates, deeds or contracts concerning real property**,** stocks and bonds, accounts, notes and judgments receivable, and all life or health insurance policies." 2008 U.S. Dist. LEXIS 116468, at *18 (E.D. Cal. Dec. 18, 2008). The court first noted that "most of these documents are not of a type created by the taxpayer, and thus it is not likely that any testimonial evidence would be sought in the form of these documents." *Id*. The court then stated that "there is no apparent testimonial value to any admission of the existence of the requested records or of Respondent's possession of those documents because it is common knowledge that

8

banks and financial institutions keep records and send out statement, [sic] vehicle registration agencies issue certificates of ownership and registration, insurance agencies issue policies, etc. *Id.* at *18-19. Finally, the court found that "[b]ecause the records were made or issued by a third party, Respondent's act of production would not amount to authentication." *Id.* at *19. The court ultimately concluded that the claim of Fifth Amendment privilege had not been met. *Id. See also Fisher v. United States*, 425 U.S. at 426 (Brennan, J., concurring) (noting that "[p]roduction of documentary materials created or authenticated by a State or the Federal Government, such as automobile registrations or property deeds, would seem ordinarily to fall outside the protection of the privilege"); *United States v. Carlin*, 2006 U.S. Dist. LEXIS 64910 (E.D. Pa. 2006) (finding that, "to the extent that the IRS has summonsed documents prepared by third-parties, such as bank statements and postal money order receipts, [defendant] may not shield their production by invoking the Fifth Amendment privilege against self-incrimination."); *but see In re DG Acquisition Corp.*, 208 B.R. at 331 (finding that compelling debtors' wives to turn over bank accounts and documents held by them and known to the trustee "would be an implicit authentication demonstrating [the wives'] possession or control over the documents").

The *Tervort* case shows that, with regard to documents prepared by third parties, courts engage in the traditional two-part inquiry in determining whether an act of production should be considered testimonial: 1) would the production implicitly admit the existence of documents the government was previously unaware of or, alternatively, 2) would the act of production authenticate those documents? *See AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. International Dev. & Trade Servs.*, 1999 U.S. Dist. LEXIS 16617, at *19-20.

At the hearing, the trustee established its awareness of the existence of Flores' bank statements and documents evidencing ownership of real property and vehicles. *See Doe v. United States (In re Grand Jury Subpoena)*, 383 F.3d at 910 (noting, in the context of examining the "testimonial" prong of the act-of-production privilege, that "[t]he government 'bears the burdens of production and proof on the questions of . . . possession and existence of the summoned documents."). In light of the trustee's prior knowledge of these documents, Flores' compelled production would not be testimonial under the first example of when an act of production may implicate the Fifth Amendment.  *See Fisher*, 425 U.S. at 411 (noting that where the existence of the documents is a foregone conclusion, their compelled production is not testimonial, and thus is not be protected by the Fifth Amendment).  Additionally, because these documents can all be authenticated without Flores' testimony, the second example of when an act of production may be testimonial is also not implicated.  *See Fisher*, 425 U.S. at 413 (noting that a taxpayer who had not prepared the subpoenaed documents would not be competent to authenticate them because he would not be in a position to vouch for their accuracy); *United States v. Taylor*, 2007 U.S. Dist. LEXIS 18357, at *18 (D. Ariz. Mar. 14, 2007) (rejecting defendant's assertion that compelled production of her bank statements would be testimonial because only the bank's employees could authenticate defendant's bank statements).

Without a finding that the act of production would be testimonial (i.e. that producing the documents would admit their existence or authenticate them), an examination of whether the production would be self-incriminatory is unnecessary.  *See Fox*, 721 F.2d at 40 (an act of production must be both testimonial and incriminatory before that act will be protected by the Fifth Amendment).  In sum, the court finds that Flores has not established his entitlement to claim the

Fifth Amendment act-of-production privilege with regard to: 1) his bank statements from 2005, 2006, 2007 and 2008 for any accounts on which Flores is a signatory; 2) any titles for vehicles, boats, recreational vehicles, trailers, and any other titled property in which Flores currently holds an interest, either individually or through community property; and 3) any documents evidencing ownership in real property in which Flores holds an ownership interest. The act of producing these documents would not have the required "testimonial" aspects to invoke Fifth Amendment protection.

The final category of documents requested by the trustee constitutes Flores' financial statements, either prepared by Flores or on his behalf, for the years 2005, 2006, 2007 and 2008. Similarly, in the trustee's request for tax returns, etc. (addressed above) the trustee also requested the production of "any other supporting documentation evidencing income earned" for Flores and his wife. The same analysis described above–would production of the documents be testimonial and incriminating?–applies to the production of these documents, regardless of who prepared them. *See Fox*, 721 F.2d at 39 (distinguishing *Fisher*, which held that a taxpayer could not be shielded from compelled disclosure of his accountant's work papers (because such production was not "testimonial"), and concluding that, where such production *would* constitute testimony as to the identity and genuineness of the documents, "who prepared the records is far less important than the fact that they are [the subpoenaed party's] records"). Here, Flores' production of his personal financial statements, as well as other documents evidencing his income (whether prepared by him or by his accountant) would be testimonial. By producing the requested documents, Flores would be admitting their existence as well as the fact that they are *his* records and are in his possession and control. *See Fisher*, 425 U.S. at 410. Additionally, his production of these documents in response

11

to the Trustee's subpoena would authenticate them; it would serve as an admission of his belief that "the papers are those described in the subpoena." *Id.*

Unlike the government in *Fisher*, the trustee has not established that it was already aware of the existence of Flores' personal financial statements (such that the first prong of the testimonial aspect of their production could be overcome). And as far as the "other supporting documents" evidencing his and his wife's income, this appears to be the kind of "fishing expedition, that the Fifth Amendment was designed to prevent." *Fox*, 721 F.2d at 38 (finding that a non-specific summons for "all books and records" of the defendant "may compel the taxpayer to add to the 'sum total of the Government's information,' and concluding that such a broad summons was nothing more than an impermissible fishing expedition). Even if the trustee had been able to establish its prior knowledge of these documents, Flores' compelled production of them would still qualify for protection under the second prong of the testimonial inquiry; his production would serve to authenticate the documents. *See Fox*, 721 F.2d at 39 (finding that "compelled production of records in a taxpayer's possession–even records prepared by a third party–implicitly authenticates the records as the taxpayer's own and thus violates the Fifth Amendment"). In sum, the court finds that compelling Flores' to produce his personal financial statements (insofar as they are not required records), and requiring the production of "any other supporting documents" evidencing his and his wife's income, would be testimonial under both prongs of the testimonial inquiry as described in *Fisher*. Thus, the first prong of the Fifth Amendment act-of-production privilege–that the production would be "testimonial"–has been satisfied.

With respect to the second prong of the test (that the production would be self-incriminating), Flores has established that requiring him to produce the documents would tend to incriminate him.

12

"'The central standard for the . . . application of the fifth amendment privilege against self-incrimination is whether the claimant is confronted by substantial and 'real', and not merely trifling or imaginary, hazards of incrimination.'  The privilege applies only in 'instances where the witness has reasonable cause to apprehend danger' of criminal liability. *United States v. Argomaniz*, 925 F.2d 1349, 1353 (11th Cir. 1991) (citations omitted); *see also Butcher v. Bailey*, 753 F.2d 465, 470 (6th Cir. 1985) (stating that the defendant seeking to avoid production of certain documents on Fifth Amendment grounds "bears the 'burden of establishing a reasonable cause to fear prosecution' by 'identifying the nature of the criminal charge or supplying sufficient facts so that a particular criminal charge can reasonably be identified by the court.'") (citation omitted). Flores cannot be compelled to produce his private financial statements or other supporting documents (not included in his filed tax forms, which fall within the "required records" exception to the act-of-production privilege) evidencing income earned for Flores and his wife.

There is the independent question whether the production of documents proving the Defendant's ownership of various items of real and personal property is appropriate. The standard for production in general is that the discovery will likely be relevant, or will lead to the discovery of information relevant at trial. *See* FED.R.CIV.P. 26(b)(1); *see also* CHARLES ALAN WRIGHT & ALAN MILLER & RICHARD R. MARCUS, 8B FED. PRACT. & PROC (3D), § 2206 (West 2010). As a general rule, whether a defendant is capable of satisfying a judgment is not relevant to the question of whether the plaintiff is entitled to a judgment. Absent a more specific showing by the Plaintiff here that the discovery of this defendant's assets is relevant to (or is likely to lead to the discovery of information relevant to) establishing an element of the Plaintiff's case, the request for production of these items should be denied as beyond the scope of discovery permitted even under the very

generous standards of the Federal Rules of Civil Procedure. *See, e.g., Ranney-Brown Distributors, Inc. v. E.T. Barwick Indus., Inc.*, 75 F.R.D. 3, 4 (S.D.Ohio 1977) ("ordinarily Rule 26 will not permit the discovery of facts concerning a defendant's financial status or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence").[1]

### Conclusion

For the reasons stated, the court concludes that only Flores' financial statements and "other supporting documentation evidencing income earned" for Flores and his wife qualify for protection under the Fifth Amendment privilege against self-incrimination. The court further concludes that the discovery relating to real and personal assets of the defendant should be barred as not relevant (though without prejudice to the Plaintiff's establishing by subsequent pleading the relevance of such information to the Plaintiff's cause of action). The balance of the materials sought must be produced as requested.

An Order consistent with this decision shall be separately entered. Counsel for Plaintiff is directed to submit a form of order consistent with this decision.

# # #

---

[1] For example, when the cause of action itself directly invokes the identification of specific assets, then discovery might be appropriately compelled. *See, e.g., Ayyash v. Bank of Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (fraud and embezzlement); *Andrews v. Holloway*, 1995 U.S. Dist. LEXIS 22121 (D.N.J. Nov. 9, 1995) (action to enjoin the defendant from transferring assets).